Sweigard et al., Appellants, *v.* Pennsylvania Department of Transportation.

Argued May 22, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*F. Lee Shipman,* with him *Goldberg, Evans & Katzman,* for appellants.

*Edward V. A. Kussy,* Assistant Attorney General, with him *Edward A. Hosey,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for Commonwealth, appellee.

OPINION PER CURIAM, September 19, 1973:

Appellants commenced an action in trespass alleging injuries while proceeding along Pennsylvania Route 147, resultant from a rock fall due to negligent maintenance and construction by the Pennsylvania Department of Transportation. This appeal arises from an order of the Commonwealth Court sustaining the Commonwealth's preliminary objections based on constitutional immunity, as found in Article I, Section 11 of the Constitution of Pennsylvania, and dismissing appellants' complaint. We now affirm.

Appellants make three contentions: the doctrine of sovereign immunity in Pennsylvania is judicially, and not constitutionally established; Article I, Section 11 of the Constitution of Pennsylvania constitutes a waiver of the Commonwealth's immunity from tort liability; and the enactment of legislation authorizing the Department of Property and Supplies to purchase liability insurance constitutes a waiver of sovereign immunity and consent to suit for tort liability.

The pertinent portion of Article I, Section 11 of our Constitution provides: "Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Initially, we recognize that the maintenance and construction of roads is a governmental and not a proprietary function. Thus, this is clearly an action against the Commonwealth. *See Biello v. Pennsylvania Liquor Control Board*, 454 Pa. 179, 301 A. 2d 849 (1973). We have just recently spoken directly to appellants' first and third contentions. In *Brown v. Commonwealth*, 453 Pa. 566, 571, 305 A. 2d 868, 871 (1973) we reasserted that "Article I, Section 11 of our Constitution compels the conclusion that this Commonwealth's immunity is constitutionally, not judicially mandated. . . ." We also rejected in *Brown* the notion

that the existence of statutorily mandated public liability insurance evidences a legislative intent to reject sovereign immunity in this context. *Id.* at 570, 305 A. 2d at 869. In light of our holding that Article I, Section 11 *establishes* sovereign immunity, appellants' contention that that section *waives* such immunity is obviously without merit.

Order affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The majority again allows a judicially-created anachronism to deprive a litigant of his day in court. I dissent for the reasons set out in my dissenting opinion in *Brown v. Commonwealth,* 453 Pa. 566, 577, 305 A. 2d 868, 871 (1973) (joined by NIX and MANDERINO, JJ.), and Mr. Justice NIX's dissenting opinion in *Biello v. Pennsylvania Liquor Control Board,* 454 Pa. 179, 187, 301 A. 2d 849, 853 (1973), in which I joined.[1]

In *Brown,* supra, we were presented with a situation in which the Legislature had mandated that the agency in question procure insurance. Likewise, here, the Department of Property and Supplies is, by statute, required to purchase liability insurance. As I emphasized in *Brown,* "there is no rational reason why the majority could not and should not now judicially abrogate the doctrine of sovereign immunity in toto, or at the least, refuse to apply it, where, as here, an instrumentality of the Commonwealth has obtained liability insurance (at the command of the Legislature) to compensate those injured through the fault of its agents."[2]

---

[1] See also *Thomas v. Baird,* 433 Pa. 482, 485, 252 A. 2d 653, 655 (1969) (ROBERTS, J., dissenting).

[2] *Brown v. Commonwealth,* 453 Pa. 566, 578, 305 A. 2d 868, 871 (1973) (footnote).

I also take this opportunity to note that another state supreme court has acted to abolish the antiquated doctrine of sovereign immunity. In *Board of Commissioners v. Splendour Shipping & Enterprises Co.,* 273 So. 2d 19 (La. 1973), the Supreme Court of Louisiana judicially abrogated that state's long-standing rule of sovereign immunity for state agencies. That case is particularly relevant to the majority's theory that " 'Article I, Section 11 of our Constitution compels the conclusion that this Commonwealth's immunity is constitutionally, not judicially mandated . . . ,' " for the Louisiana court acted in the face of a constitutional provision substantially identical to our own.[3]

The *Splendour Shipping* court squarely faced the inconsistency inherent in the Louisiana Constitution which, in addition to the so-called sovereign immunity clause, mandates that "every person for injury done him . . . shall have adequate remedy by due process of law and justice administered without denial, partiality

---

"Cf. Falco v. Pados, 444 Pa. 372, 282 A. 2d 351 (1971) ; Flagiello v. Pennsylvania Hospital, 417 Pa. 486, 208 A. 2d 193 (1965)." Id. at 578 n.*, 305 A. 2d at 871 n.*.

[3] Compare La. Const. art. III, §35, "The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, agencies and authorities and other public or governmental bodies; and each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant's immunity both from suit and from liability.", with Pa. Const. art. I, §11, "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

or unreasonable delay." La. Const. art. I, §6. Having thus found the state constitution inconclusive, that court continued: "Considering the source of the doctrine in its history, there are three reasons which move us to withdraw from the Board the immunity with which the court has previously insulated it from tort suits. It is unfair. It tends toward governmental irresponsibility. It is an unnecessary exception to the policy of the State of Louisiana as expressed in . . . our Constitution." 273 So. 2d at 25.

The same analysis applies to our own constitution. Article I, Section 11 considered in its entirety presents an inconsistency remarkably similar to that in the Louisiana Constitution.

"All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." The majority inexplicably chooses to prefer one sentence of our constitution over another—one right, the questionable immunity privilege of the Commonwealth, is preferred to the unequivocal right granted to "every man" of "have remedy by due course of law." I cannot accept this conclusion.

"The Constitution is . . . neutral—it neither requires nor prohibits sovereign immunity. . . . The framers of the Constitution accepted the then prevalent concept of sovereignty to include immunity from suit, and attempted through this section to implement the power of the State to consent to actions brought against it." *Biello v. Pennsylvania Liquor Control Board,* supra at 189, 301 A. 2d at 854 (NIX, J., dissenting, joined by ROBERTS, J.).

The day of the absolute monarch endowed with divine right has long since passed into the history books. It is time that this Court relegated another vestige of the autocratic past, the doctrine of sovereign immunity, to that same resting place.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissent.

---

DISSENTING OPINION BY MR. JUSTICE NIX:

I am still of the opinion expressed in my dissenting opinions in *Biello v. Liquor Control Board*, 454 Pa. 179, 187, 301 A. 2d 849, 853 (1973) (joined by ROBERTS, J.) and *Brown v. Commonwealth*, 453 Pa. 566, 579, 305 A. 2d 868, 871 (1973) (joined by ROBERTS and MANDERINO, JJ.).